Justice Alito
delivered the opinion of the Court.
Chapter 13 of the Bankruptcy Code provides bankruptcy protection to “individual[s] with regular income” whose debts fall within statutory limits. 11 U. S. C. §§ 101(30), 109(e). Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, see §§ 704(a)(1), 726, Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income, see §§ 1306(b), 1321,1322(a)(1), 1328(a). A bankruptcy trustee oversees the filing and execution of a Chapter 13 debtor’s plan. § 1322(a)(1); see also 28 U. S. C. § 586(a)(3).
Section 1325 of Title 11 specifies circumstances under which a bankruptcy court “shall” and “may not” confirm a plan. §§ 1325(a), (b). If an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires *509 the debtor either to pay unsecured creditors in full or to pay all “projected disposable income” to be received by the debtor over the duration of the plan.
We granted certiorari to decide how a bankruptcy court should calculate a debtor’s “projected disposable income.” Some lower courts have taken what the parties term the “mechanical approach,” while most have adopted what has been called the “forward-looking approach.” We hold that the “forward-looking approach” is correct.
I
As previously noted, § 1325 provides that if a trustee or an unsecured creditor objects to a Chapter 13 debtor’s plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or “provides that all of the debtor’s projected disposable income to be received” over the duration of the plan “will be applied to make payments” in accordance with the terms of the plan. 11 U. S. C. § 1325(b)(1); see also § 1325(b)(1) (2000 ed.). Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 119 Stat. 23, the Bankruptcy Code (Code) loosely defined “disposable income” as “income which is received by the debtor and which is not reasonably necessary to be expended” for the “maintenance or support of the debtor,” for qualifying charitable contributions, or for business expenditures. §§ 1325(b)(2)(A), (B).
The Code did not define the term “projected disposable income,” and in most cases, bankruptcy courts used a mechanical approach in calculating projected disposable income. That is, they first multiplied monthly income by the number of months in the plan and then determined what portion of the result was “excess” or “disposable.” See 2 K. Lundin, Chapter 13 Bankruptcy §164.1, p. 164-1, and n. 4 (3d ed. 2000) (hereinafter Lundin (2000 ed.)) (citing cases).
In exceptional cases, however, bankruptcy courts took into account foreseeable changes in a debtor’s income or ex *510 penses. See In re Heath, 182 B. R. 557, 559-561 (Bkrtcy. App. Panel CA9 1995); In re Richardson, 283 B. R. 783, 799 (Bkrtcy. Ct. Kan. 2002); Tr. of Oral Arg. 7. Accord, 1 Lundin §35.10, at 35-14 (2000 ed.) (“The debtor should take some care to project estimated future income on Schedule I to include anticipated increases or decreases [in income] so that the schedule will be consistent with any evidence of income the debtor would offer at a contested confirmation hearing”).
BAPCPA left the term “projected disposable income” undefined but specified in some detail how “disposable income” is to be calculated. “Disposable income” is now defined as “current monthly income received by the debtor” less “amounts reasonably necessary to be expended” for the debt- or’s maintenance and support, for qualifying charitable contributions, and for business expenditures. §§ 1325(b)(2) (A)(i) and (ii) (2006 ed.). “Current monthly income,” in turn, is calculated by averaging the debtor’s monthly income during what the parties refer to as the 6-month lookback period, which generally consists of the six full months preceding the filing of the bankruptcy petition. See § lOl(lOAXAXi).[1] The phrase “amounts reasonably necessary to be expended” in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for “maintenance or support,” see § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included,[2] see §§ 707(b)(2) (2006 ed. and Supp. II), 1325(b)(3)(A) (2006 ed.).
*511 II
A
Respondent had $86,793.36 in unsecured debt when she filed for Chapter 13 bankruptcy protection in October 2006. In the six months before her filing, she received a one-time buyout from her former employer, and this payment greatly inflated her gross income for April 2006 (to $11,990.03) and for May 2006 (to $15,356.42). App. 84, 107. As a result of these payments, respondent’s current monthly income, as averaged from April through October 2006, was $5,343.70 — a figure that exceeds the median income for a family of one in Kansas. See id., at 78. Respondent’s monthly expenses, calculated pursuant to § 707(b)(2), were $4,228.71. Id., at 83. She reported a monthly “disposable income” of $1,114.98 on Form 22C. Ibid.
On the form used for reporting monthly income (Schedule I), she reported income from her new job of $1,922 per month — which is below the state median. Id., at 66; see also id., at 78. On the form used for reporting monthly expenses (Schedule J), she reported actual monthly expenses of $1,772.97. Id., at 68. Subtracting the Schedule J figure from the Schedule I figure resulted in monthly disposable income of $149.03.
Respondent filed a plan that would have required her to pay $144 per month for 36 months. See id., at 93. Petitioner, a private Chapter 13 trustee, objected to confirmation of the plan because the amount respondent proposed to pay was less than the full amount of the claims against her, see § 1325(b)(1)(A), and because, in petitioner’s view, respondent was not committing all of her “projected disposable income” to the repayment of creditors, see § 1325(b)(1)(B). According to petitioner, the proper way to calculate projected disposable income was simply to multiply disposable income, as calculated on Form 22C, by the number of months in the commitment period. Employing this mechanical approach, *512 petitioner calculated that creditors would be paid in full if respondent made monthly payments of $756 for a period of 60 months. Id., at 108. There is no dispute that respondent’s actual income was insufficient to make payments in that amount. Tr. of Oral Arg. 3-4.
B
The Bankruptcy Court endorsed respondent’s proposed monthly payment of $144 but required a 60-month plan period. In re Lanning, No. 06-41037 etc., 2007 WL 1451999, *8 (Bkrtcy. Ct. Kan. 2007). The court agreed with the majority view that the word “projected” in § 1325(b)(1)(B) requires courts “to consider at confirmation the debtor’s actual income as it is reported on Schedule I.” Id., at *5 (emphasis added). This conclusion was warranted by the text of § 1325(b)(1), the Bankruptcy Court reasoned, and was necessary to avoid the absurd result of denying bankruptcy protection to individuals with deteriorating finances in the six months before filing. Ibid.
Petitioner appealed to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed. In re Lanning, 380 B. R. 17, 19 (2007). The panel noted that, although Congress redefined “disposable income” in 2005, it chose not to alter the pre-existing term “projected disposable income.” Id., at 24. Thus, the panel concluded, there was no reason to believe that Congress intended to alter the pre-BAPCPA practice under which bankruptcy courts determined projected disposable income by reference to Schedules I and J but considered other evidence when there was reason to believe that the schedules did not reflect a debtor’s actual ability to pay. Ibid.
The Tenth Circuit affirmed. In re Lanning, 545 F. 3d 1269, 1270 (2008). According to the Tenth Circuit, a court, in calculating “projected disposable income,” should begin with the “presumption” that the figure yielded by the mechanical approach is correct, but the court concluded that *513 this figure may be rebutted by evidence of a substantial change in the debtor’s circumstances. Id., at 1278-1279.
This petition followed, and we granted certiorari. 558 U. S. 989 (2009).
Ill
A
The parties differ sharply in their interpretation of § 1325’s reference to “projected disposable income.” Petitioner, advocating the mechanical approach, contends that “projected disposable income” means past average monthly disposable income multiplied by the number of months in a debtor’s plan. Respondent, who favors the forward-looking approach, agrees that the method outlined by petitioner should be determinative in most cases, but she argues that in exceptional eases, where significant changes in a debtor’s financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate adjustment. Respondent has the stronger argument.
First, respondent’s argument is supported by the ordinary meaning of the term “projected.” “When terms used in a statute are undefined, we give them their ordinary meaning.” Asgrow Seed Co. v. Winterboer, 513 U. S. 179, 187 (1995). Here, the term “projected” is not defined, and in ordinary usage future occurrences are not “projected” based on the assumption that the past will necessarily repeat itself. For example, projections concerning a company’s future sales or the future cashflow from a license take into account anticipated events that may change past trends. See, e. g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U. S. 308, 316 (2007) (describing adjustments to “projected sales” in light of falling demand); Innovair Aviation, Ltd. v. United States, 83 Fed. Cl. 498, 502, 504-506 (2008) (calculating projected cashflow and noting that past sales are “not necessarily the number of sales” that will be made in the future). On the night of an election, experts do not “project” the percentage *514 of the votes that a candidate will receive by simply assuming that the candidate will get the same percentage as he or she won in the first few reporting precincts. And sports analysts do not project that a team’s winning percentage at the end of a new season will be the same as the team’s winning percentage last year or the team’s winning percentage at the end of the first month of competition. While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome. See In re Kibbe, 361 B. R. 302, 312, n. 9 (Bkrtcy. App. Panel CA1 2007) (per curiam) (contrasting “multiplied,” which “requires only mathematical acumen,” with “projected,” which requires “mathematic acumen adjusted by deliberation and discretion”).
Second, the word “projected” appears in many federal statutes, yet Congress rarely has used it to mean simple multiplication. For example, the Agricultural Adjustment Act of 1938 defined “projected national yield,” “projected county yield,” and “projected farm yield” as entailing historical averages “adjusted for abnormal weather conditions,” “trends in yields,” and “any significant changes in production practices.” 7 U. S. C. §§ 1301(b)(8)(B), (13)(J), (K).[3]
By contrast, we need look no further than the Bankruptcy Code to see that when Congress wishes to mandate simple multiplication, it does so unambiguously — most commonly by using the term “multiplied.” See, e. g., 11 U. S. C. § 1325(b)(3) (“current monthly income, when multiplied by *515 12”); §§ 704(b)(2), 707(b)(6), (7)(A) (same); §§ 707(b)(2)(A)®, (B)(iv) (“multiplied by 60”). Accord, 2 U. S. C. § 58(b)(1)(B) (“multiplied by the number of months in such year”); 5 U. S. C: § 8415(a) (“multiplied by such individual’s total service”); 42 U. S. C. § 403(f)(3) (“multiplied by the number of months in such year”).
Third, pre-BAPCPA case law points in favor of the “forward-looking” approach. Prior to BAPCPA, the general rule was that courts would multiply a debtor’s current monthly income by the number of months in the commitment period as the first step in determining projected disposable income. See, e. g., In re Killough, 900 F. 2d 61, 62-63 (CA5 1990) (per curiam); In re Anderson, 21 F. 3d 355, 357 (CA9 1994); In re Solomon, 67 F. 3d 1128, 1132 (CA4 1995). See 2 Lundin § 164.1, at 164-1 (2000 ed.) (“Most courts focus on the debtor’s current income and extend current income (and expenditures) over the life of the plan to calculate projected disposable income”). But courts also had discretion to account for known or virtually certain changes in the debtor’s income. See Heath, 182 B. R., at 559-561; Richardson, 283 B. R., at 799; In re James, 260 B. R. 498, 514-515 (Bkrtcy. Ct. Idaho 2001); In re Jobe, 197 B. R. 823, 826-827 (Bkrtcy. Ct. WD Tex. 1996); In re Crompton, 73 B. R. 800, 808 (Bkrtcy. Ct. ED Pa. 1987); see also In re Schyma, 68 B. R. 52, 63 (Bkrtcy. Ct. Minn. 1985) (“[T]he prospect of dividends ... is not so certain as to require Debtors or the Court to consider them as regular or disposable income”); In re Krull, 54 B. R. 375, 378 (Bkrtcy. Ct. Colo. 1985) (“Since there are no changes in income which can be clearly foreseen, the Court must simply multiply the debtor’s current disposable income by 36 in order to determine his ‘projected’ income”).[4] *516 This judicial discretion was well documented in contemporary bankruptcy treatises. See 8 Collier on Bankruptcy ¶ 1325.08[4][a], p. 1325-50 (rev. 15th ed. 2004) (hereinafter Collier) (“As a practical matter, unless there are changes which can be clearly foreseen, the court must simply multiply the debtor’s current monthly income by 36 and determine whether the amount to be paid under the plan equals or exceeds that amount” (emphasis added)); 3 W. Norton, Bankruptcy Law and Practice § 75.10, p. 64 (1991) (“It has been held that the court should focus upon present monthly income and expenditures and, absent extraordinary circumstances, project these current amounts over the life of the plan to determine projected disposable income” (emphasis added)); 2 Lundin § 164.1, at 164-28 to 164-31 (2000 ed.) (describing how reported decisions treated anticipated changes in income, particularly where such changes were “too speculative to be projected”); see also In re Greer, 388 B. R. 889, 892 (Bkrtey. Ct. CD Ill. 2008) (“ As a practical matter, unless there are changes which can be clearly foreseen, the court must simply multiply the debtor’s current monthly income by thirty-six’ ” (quoting 5 Collier ¶ 1325.08[4][a] (15th ed. 1995))); James, supra, at 514 (same) (quoting 8 Collier ¶ 1325.08[4][a] (rev. 15th ed. 2000)); Crompton, supra, at 808 (same) (citing 5 Collier ¶¶ 1325.08[4][a], [b], at 1325-47 to *517 1325-48 (15th ed. 1986)). Accord, 8 id., ¶ 1325.08[4][b], at 1325-53 (rev. 15th ed. 2007) (“As with the income side of the budget, the court must simply use the debtor’s current expenses, unless a change in them is virtually certain” (emphasis added)). Indeed, petitioner concedes that courts possessed this discretion prior to BAPCPA. Tr. of Oral Arg. 7.
Pre-BAPCPA bankruptcy practice is telling because we “ ‘ “will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.”’” Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U. S. 443, 454 (2007); Lamie v. United States Trustee, 540 U. S. 526, 539 (2004); Cohen v. de la Cruz, 523 U. S. 213, 221 (1998); see also Grogan v. Garner, 498 U. S. 279, 290 (1991); Kelly v. Robinson, 479 U. S. 36, 47 (1986). Congress did not amend the term “projected disposable income” in 2005, and pre-BAPCPA bankruptcy practice reflected a widely acknowledged and well-documented view that courts may take into account known or virtually certain changes to debtors’ income or expenses when projecting disposable income. In light of this historical practice, we would expect that, had Congress intended for “projected” to carry a specialized— and indeed, unusual — meaning in Chapter 13, Congress would have said so expressly. Cf., e. g., 26 U. S. C. §§ 279(c)(3)(A), (B) (expressly defining “projected earnings” as reflecting a 3-year historical average).
B
The mechanical approach also clashes repeatedly with the terms of 11 U. S. C. § 1325.
First, § 1325(b)(l)(B)’s reference to projected disposable income “to be received in the applicable commitment period” strongly favors the forward-looking approach. There is no dispute that respondent would in fact receive far less than $756 per month in disposable income during the plan period, so petitioner’s projection does not accurately reflect “income *518 to be received” during that period. See In re Nowlin, 576 F. 3d 258, 263 (CA5 2009). The mechanical approach effectively reads this phrase out of the statute when a debtor’s current disposable income is substantially higher than the income that the debtor predictably will receive during the plan period. See Kawaauhau v. Geiger, 523 U. S. 57, 62 (1998) (“[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law” (internal quotation marks omitted)).
Second, § 1325(b)(1) directs courts to determine projected disposable income “as of the effective date of the plan,” which is the date on which the plan is confirmed and becomes binding, see § 1327(a). Had Congress intended for projected disposable income to be nothing more than a multiple of disposable income in all cases, we see no reason why Congress would not have required courts to determine that value as of the filing date of the plan. See Fed. Rule Bkrtcy. Proe. 3015(b) (requiring that a plan be filed within 14 days of the filing of a petition). In the very next section of the Code, for example, Congress specified that a debtor shall commence payments “not later than 30 days after the date of the filing of the plan.” § 1326(a)(1) (emphasis added). Congress’ decision to require courts to measure projected disposable income “as of the effective date of the plan” is more consistent with the view that Congress expected courts to consider postfiling information about the debtor’s financial circumstances. See 545 F. 3d, at 1279 (‘‘[Determining whether or not a debtor has committed all projected disposable income to repayment of the unsecured creditors ‘as of the effective date of the plan’ suggests consideration of the debtor’s actual financial circumstances as of the effective date of the plan”).
Third, the requirement that projected disposable income “will be applied to make payments” is most naturally read to contemplate that the debtor will actually pay creditors *519 in the calculated monthly amounts. § 1325(b)(1)(B). But when, as of the effective date of a plan, the debtor lacks the means to do so, this language is rendered a hollow command.
C
The arguments advanced in favor of the mechanical approach are unpersuasive. Noting that the Code now provides a detailed and precise definition of “disposable income,” proponents of the mechanical approach maintain that any departure from this method leaves that definition “‘with no apparent purpose.’ ” In re Kagenveama, 541 F. 3d 868, 873 (CA9 2008). This argument overlooks the important role that the statutory formula for calculating “disposable income” plays under the forward-looking approach. As the Tenth Circuit recognized in this case, a court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor’s future income or expenses.[5]
Petitioner faults the Tenth Circuit for referring to a rebut-table “presumption” that the figure produced by the mechanical approach accurately represents a debtor’s “projected disposable income.” See 545 F. 3d, at 1278-1279. Petitioner notes that the Code makes no reference to any such presumption but that related Code provisions expressly create other rebuttable presumptions. See §§707(b)(2)(A)(i) and (B)(i). He thus suggests that the Tenth Circuit improperly supplemented the text of the Code.
The Tenth Circuit’s analysis, however, simply heeds the ordinary meaning of the term “projected.” As noted, a person making a projection uses past occurrences as a starting point, and that is precisely what the Tenth Circuit prescribed. See, e. g., Nowlin, supra, at 260, 263.
*520 Petitioner argues that only the mechanical approach is consistent with § 1129(a)(15)(B), which refers to “projected disposable income of the debtor (as defined in section 1325(b)(2)).” This cross-reference, petitioner argues, shows that Congress intended for the term “projected disposable income” to incorporate, presumably in all contexts, the defined term “disposable income.” It is evident that § 1129(a) (15)(B) refers to the defined term “disposable income,” see § 1325(b)(2), but that fact offers no insight into the meaning of the word “projected” in §§ 1129(a)(15)(B) and 1325(b)(1)(B). We fail to see how that word acquires a specialized meaning as a result of this cross-reference — particularly where both §§ 1129(a)(15)(B) and 1325(b)(1)(B) refer to projected disposable income “to be received” during the relevant period. See supra, at 517-518.
Petitioner also notes that § 707 allows courts to take “special circumstances” into consideration, but that § 1325(b)(3) incorporates § 707 only with respect to calculating expenses. See In re Wilson, 397 B. R. 299, 314-315 (Bkrtcy. Ct. MDNC 2008). Thus, he argues, a “special circumstances” exception should not be inferred with respect to the debtor’s income. We decline to infer from § 1325’s incorporation of § 707 that Congress intended to eliminate, sub silentio, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes. Accord, In re Liverman, 383 B. R. 604, 613, and n. 15 (Bkrtcy. Ct. NJ 2008).
D
In cases in which a debtor’s disposable income during the 6-month lookback period is either substantially lower or higher than the debtor’s disposable income during the plan period, the mechanical approach would produce senseless results that we do not think Congress intended. In cases in which the debtor’s disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make. And where, as in the present case, the debtor’s disposable income during *521 the plan period is substantially lower, the mechanical approach would deny the protection of Chapter 13 to debtors who meet the chapter’s main eligibility requirements. Here, for example, respondent is an “individual whose income is sufficiently stable and regular” to allow her “to make payments under a plan,” § 101(30), and her debts fall below the limits set out in § 109(e). But if the mechanical approach were used, she could not file a confirmable plan. Under § 1325(a)(6), a plan cannot be confirmed unless “the debtor will be able to make all payments under the plan and to comply with the plan.” And as petitioner concedes, respondent could not possibly make the payments that the mechanical approach prescribes.
In order to avoid or at least to mitigate the harsh results that the mechanical approach may produce for debtors, petitioner advances several possible escape strategies. He proposes no comparable strategies for creditors harmed by the mechanical approach, and in any event none of the maneuvers that he proposes for debtors is satisfactory.
1
Petitioner first suggests that a debtor may delay filing a petition so as to place any extraordinary income outside the 6-month lookback period. We see at least two problems with this proposal.
First, delay is often not a viable option for a debtor sliding into bankruptcy.
“Potential Chapter 13 debtors typically find a lawyer’s office when they are one step from financial Armageddon: There is a foreclosure sale of the debtor’s home the next day; the debtor’s only car was mysteriously repossessed in the dark of last night; a garnishment has reduced the debtor’s take-home pay below the ordinary requirements of food and rent. Instantaneous relief is expected, if not necessary.” K. Lundin & W. Brown, Chapter 13 Bankruptcy §3.1[2] (rev. 4th ed. 2009), http://www.chl3online.com/Subscriber/Chapter_13_ *522 Bankruptey_4th_Lundin_Brown.htm (as visited June 3, 2010, and available in Clerk of Court’s ease file).
See also id., §38.1 (“Debtor’s counsel often has little discretion when to file the Chapter 13 case”).
Second, even when a debtor is able to delay filing a petition, such delay could be risky if it gives the appearance of bad faith. See 11 U. S. C. § 1325(a)(7) (requiring, as a condition of confirmation, that “the action of the debtor in filing the petition was in good faith”); see also, e. g., In re Myers, 491 F. 3d 120, 125 (CA3 2007) (citing “ ‘the timing of the petition’” as a factor to be considered in assessing a debt- or’s compliance with the good-faith requirement). Accord, Neufeld v. Freeman, 794 F. 2d 149, 153 (CA4 1986) (a debt- or’s prepetition conduct may inform the court’s good-faith inquiry).
2
Petitioner next argues that a debtor with unusually high income during the six months prior to the filing of a petition could seek leave to delay filing a schedule of current income (Schedule I) and then ask the bankruptcy court to exercise its authority under § 101(10A)(A)(ii) to select a 6-month period that is more representative of the debtor’s future disposable income. We see little merit in this convoluted strategy. If the Code required the use of the mechanical approach in all cases, this strategy would improperly undermine what the Code demands. And if, as we believe, the Code does not insist upon rigid adherence to the mechanical approach in all cases, this strategy is not needed. In any event, even if this strategy were allowed, it would not help all debtors whose disposable income during the plan period is sharply lower than their previous disposable income.[6]
*523 3
Petitioner suggests that a debtor can dismiss the petition and refile at a later, more favorable date. But petitioner offers only the tepid assurance that courts “generally” do not find this practice to be abusive. Brief for Petitioner 53. This questionable stratagem plainly circumvents the statutory limits on a court’s ability to shift the lookback period, see supra, at 522, and n. 6, and should give debtors pause.[7] Cf. In re Glenn, 288 B. R. 516, 520 (Bkrtcy. Ct. ED Tenn. 2002) (noting that courts should consider, among other factors, “whether this is the first or [a] subsequent filinfg]” when assessing a debtor’s compliance with the good-faith requirement).
4
Petitioner argues that respondent might have been able to obtain relief by filing under Chapter 7 or by converting her Chapter 13 petition to one under Chapter 7. The availability of Chapter 7 to debtors like respondent who have above-median incomes is limited. In respondent’s case, a presumption of abuse would attach under § 707(b)(2)(A)(i) because her disposable income, “multiplied by 60,” exceeds the amounts specified in subclauses (I) and (II). See also § 707(b)(1) (allowing a court to dismiss a petition filed by a debtor “whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter”); App. 86-88 (“Notice to Individual Consumer Debtor under § 342(b) of the Bankruptcy Code”; “If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the *524 right to file a motion requesting that the court dismiss your case under § 707(b) of the Code”). Nevertheless, petitioner argues, respondent might have been able to overcome this presumption by claiming that her case involves “special circumstances” within the meaning of § 707(b)(2)(B)(i). Section 707 identifies as examples of “special circumstances” a “serious medical condition or a call or order to active duty in the Armed Forces,” ibid., and petitioner directs us to no authority for the proposition that a prepetition decline in income would qualify as a “special circumstance.” In any event, the “special circumstances” exception is available only to the extent that “there is no reasonable alternative,” ibid., a proposition we reject with our interpretation of § 1325(b)(1) today.[8]
In sum, each of the strategies that petitioner identifies for mitigating the anomalous effects of the mechanical approach is flawed. There is no reason to think that Congress meant for any of these strategies to operate as a safety valve for the mechanical approach.
IV
We find petitioner’s remaining arguments unpersuasive. Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor’s projected disposable income, the court may account for changes in the debtor’s income or expenses that are known or virtually certain at the time of confirmation. We therefore affirm the decision of the Court of Appeals.

It is so ordered.

 However, if a debtor does not file the required schedule (Schedule I), the bankruptcy court may select a different 6-month period. See § 101(10A)(A)(ii).

 The formula for above-median-income debtors is known as the “means test” and is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file. See Fed. Rule Bkrtcy. Proc. Official Form 22C (2010); In re Liverman, 383 B. R. 604, 606, n. 1, 608-609 (Bkrtcy. Ct. NJ 2008).

 See also, e. g., 8 U. S. C. §§ 1364(a), (c)(2) (requiring the triennial immigration-impact report to include information “projected for the succeeding five-year period, based on reasonable estimates substantiated by the best available evidence”); 10 U. S. C. §2433a(a)(2)(B) (2006 ed., Supp. Ill) (“projected cost of completing the [defense acquisition] program based on reasonable modification of [current] requirements”); 15 U. S. C. §719e(c)(2) (2006 ed.) (“projected natural gas supply and demand”); 25 U. S. C. §§ 2009(c)(1), (2) (requiring the Director of the Office of Indian Education Programs to submit an annual report containing certain projections and “a description of the methods and formulas used to calculate the amounts projected”).

 When pre-BAPCPA courts declined to make adjustments based on possible changes in a debtor’s future income or expenses, they did so because the changes were not sufficiently foreseeable, not because they concluded that they lacked discretion to depart from a strictly mechanical approach. In In re Solomon, 67 F. 3d 1128 (1995), for example, the Fourth Circuit refused to make such an adjustment because it deemed disbursements

 For the same reason, the phrase “[f]or purposes of this subsection” in § 1325(b)(2) is not rendered superfluous by the forward-looking approach.

 Under 11 U. S. C. § 521(i)(3), a debtor seeking additional time to file a schedule of income must submit the request within 45 days after filing the petition, and the court may not grant an extension of more than 45 days.

 For example, a debtor otherwise eligible for Chapter 13 protection may become ineligible if “at any time in the preceding 180 days” “the ease was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case,” or “the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.” § 109(g).

 Petitioner also suggests that some Chapter 13 debtors may be able to plead “special circumstances” on the expense side of the calculation by virtue of BAPCPA’s incorporation of the Chapter 7 means test into Chapter 13. See §§ 707(b)(2)(B)(i), (ii). This is no help to debtors like respondent, whose income has changed but whose expenses are constant.