In re Douglas Thomas **BOYCE**, Debtor.

**Douglas Thomas Boyce, Appellant,**

v.

**United States Trustee, Appellee.**

**No. 10–6286–HO.**

United States District Court,
D. Oregon,
Eugene Division.

Jan. 28, 2011.

erroneous. Fed. R. Bankr.P. 8013. Factual determinations are clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Issues of law are reviewed *de novo.* *U.S. v. Horowitz,* 756 F.2d 1400, 1403 (9th Cir. 1985). Mixed questions of law and fact are reviewed de novo. *Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991). Mixed questions arise when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Moss v. Comm'r,* 831 F.2d 833, 838 n. 9 (9th Cir.1987).

■■■ A bankruptcy court's decision to dismiss a case under 11 U.S.C. § 707(b) is reviewed for abuse of discretion. *In Re Price,* 353 F.3d 1135, 1138 (9th Cir.2004). A court abuses its discretion if it does not apply the correct law or if it bases its ruling on a clearly erroneous view of the facts. This court cannot reverse for abuse of discretion unless it has a definite and firm conviction that there has been a clear error in judgment. *In re Khachikyan,* 335 B.R. 121, 125 (9th Cir. BAP 2005).

P. Rebecca Kamitsuka, U.S. Trustee, Eugene, OR, for Robert D. Miller.

Keith D. Karnes, Olsen, Olsen & Daines, Salem, OR, Douglas Thomas Boyce.

### ORDER

MICHAEL R. HOGAN, District Judge.

Doug Boyce appeals from an order of the bankruptcy court granting the United States Trustee's motion to dismiss the debtor's case under 11 U.S.C. § 707(b)(3)(A) and under 11 U.S.C. § 707(b)(3)(B).

### *STANDARD*

■■■ The bankruptcy court's findings of fact shall not be set aside unless clearly

### *FACTUAL BACKGROUND*

Boyce is a claims adjuster for GEICO with a base salary of $57,000, and an annual profit sharing arrangement. Boyce has received a profit sharing payment every year since 2002 (including 2008 and 2009). The profit sharing payment is discretionary, but when GEICO has failed to meet growth targets in the past, it has still made payments. GEICO also provides Boyce with a vehicle that he can use for

work and personal use.[1]

Boyce funded the purchase of his residence in 2007, in part, with a $16,010 loan from his 401k. His total monthly house payment is approximately $1200. Boyce received $600 per month rent from a roommate, at the time of the purchase. The roommate moved out around March or April of 2008. Another roommate lived at the residence from October to December of 2008 and paid $300 per month.

Boyce assumed responsibility for $34,000 in student loans and two credit cards with balances of $8,000 each after his divorce was finalized in October, 2007. He incurred approximately $17,000 in new credit card debt by October, 2008. He purchased a Ford F350 with a $2,000 down payment and payments of $186 per month in March, 2008.

Boyce earned $67,961 in total cash compensation from GEICO. In 2008, which included $8,519 in profit sharing. He filed for bankruptcy protection on October 28, 2008. After filing, Boyce surrendered his Ford F350 and borrowed $14,750 from his 401k to purchase a Dodge Ram truck. He later sold the Dodge and purchased a Chevrolet truck. Boyce also borrowed $6,000 from his 401k to purchase a towable recreational camper.

Boyce did not disclose the profit sharing arrangement in his bankruptcy schedules. In addition, Boyce indicated a monthly income that was short by $109 even if the profit sharing is not included.

Boyce did not disclose rental income in his statement of financial affairs. Neither did he disclose the approximately $34,000 in student loan debt on his schedules, and has not filed amended schedules to reflect the student loans.

## DISCUSSION

The United States Trustee commenced a contested proceeding against Boyce seeking dismissal under 11 U.S.C. § 707(b). The Trustee asserts that Boyce has the ability to repay his creditors $778 per month. After an evidentiary hearing, the bankruptcy court determined that the debtor had significantly understated his income and had made choices that did not put the interests of the creditors at the forefront, amounting to a bad-faith filing. The bankruptcy court also determined that the debtor is capable of making some payment to his creditors under Chapter 13. The court also found that under a totality of the circumstances, Chapter 7 relief would in essence subordinate every creditor to Boyce's 401k loan to be paid back to Boyce himself. Accordingly, the court concluded that the fact that the debtor has a demonstrated ability to repay something and the fact that his schedules materially misstated his income together, and separately, support dismissal of the Chapter 7.

The court stated two distinct basis for dismissal under sections 707(b)(3)(A) and (b)(3)(B) of Title 11. The first basis requires a finding of bad faith on the part of the debtor. The second basis requires a finding of abuse based upon the specific debtor's financial situation. The first basis relates to conduct at the time of filing and the second basis is not restricted to the time of filing.

Boyce appeals the bankruptcy court's decision, contending that the ruling erroneously included profit sharing income for purposes of finding bad faith and applied the wrong standard in finding an abuse under the totality of the circumstances.

---

1. Boyce may use 15% of the miles on the car for personal use and amounts above that are deducted from his pay. Through 2009, his personal use deduction was $48 per biweekly pay.

Additionally, Boyce contends that forcing him into Chapter 13 does not benefit creditors.

## A. Bad Faith

A court may dismiss a Chapter 7 case, involving primarily consumer debts, or convert it to a Chapter 13 if granting relief would be an abuse of Chapter 7. 11 U.S.C. § 707(b)(1).

The bankruptcy court concluded that Boyce acted in bad faith, because he misrepresented his income and his liabilities, he purchased consumer goods that he did not need and could not afford before and after filing, and his circumstances did not demonstrate a genuine need for relief. Boyce's appeal brief only addresses whether profit sharing income should have been included in the schedules.

 Section 707(b)(3)(A) requires the bad faith to exist at the time of commencing the bankruptcy, focusing on the debtor's intent, purpose and conduct at that time. *In Re Hageney,* 422 B.R. 254, 260 (Bankr.E.D.Wash.2009).

> Bad faith may involve a dishonest debtor or nefarious acts, but such motivation or intent is not necessary. Bad faith exists if the filing of the bankruptcy was for a purpose not consistent with the Bankruptcy Code or policy even though the purpose may otherwise be lawful.... Absent allegations of subjective intent to commit wrongful acts, the evidence relevant to the determination of bad faith is the evidence which existed at the time of filing the petition.... Evidence relevant to an examination of bad faith under § 707(b)(3)(A) may be the filing of incomplete schedules or the existence of a voidable transfer prior to filing the case, but the inquiry focuses on the debtor's

conduct, not the debtor's financial affairs.

*Id.*

Boyce completed a Schedule I on which he was required to estimate average or projected monthly income. A debtor is also required to disclose all other sources of income in a statement of financial affairs. Boyce does not dispute that he under reported his monthly income by approximately $109 even without profit sharing factored in. Nor does he dispute that he failed to list approximately $11,700 in rental income within the 24 month lookback period required in the statement of financial affairs.

In addition, Boyce submitted a Schedule F listing unsecured debts. Boyce failed to list $34,000 in student loan debt.

 Applicable legal standards regarding the bad faith determination include: (1) whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims; (2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) whether the debtor's proposed family budget is excessive or extravagant; (5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; (6) whether the debtor has engaged in eve-of-bankruptcy purchases; (7) whether the debtor has a history of bankruptcy petition filings and case dismissals; (8) whether the debtor intended to invoke the automatic stay for improper purposes, such as for the sole objective of

defeating state court litigation; and (9) whether egregious behavior is present.

*In Re Mitchell,* 357 B.R. 142, 155 (Bankr. C.D.Cal.2006).

■ The court finds that the bankruptcy court appropriately dismissed the case for bad faith even absent a determination that Boyce failed to properly include profit sharing on Schedule I. Moreover, the bankruptcy court did not err in determining that profit sharing income should have been included. The record reflects that, despite the current economic climate at the time of filing, GEICO had in the past made profit sharing payments even when policy growth had not exceeded the "required" 8 percent threshold. At the time of filing, GEICO's growth rate was 7.8 percent and internet sales were increasing. Moreover, another factor in the profit sharing equation, the underwriting ratio, was "doing sensationally," and the company was beating profitability estimates through the quarter. Additionally, the cash incentive program had "helped [GEICO] get toward that eight percent growth [it] needs." The bankruptcy court appropriately concluded that history was a strong factor in predicting profit sharing and that profit sharing was not going away.

Boyce's reliance on *Hamilton v. Lanning* —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) does not demonstrate otherwise. Boyce contends that under *Hamilton,* the bankruptcy court could not require him to include profit sharing on his Schedule I unless changes in income are "known and virtually certain." However, *Hamilton* involved projected disposable income and current monthly income for purposes of confirming a chapter 13 repayment plan. Such considerations are not present in either sections 707(b)(3)(A) or (B).

The bankruptcy court further relied on Boyce's unnecessary consumer purchases, especially in light of the impact such purchases had on unsecured creditors in bankruptcy. Boyce doubled his credit card debt in the year prior to filing. Boyce also incurred unnecessary expense for a vehicle purchase, especially in light of his ability to use a company vehicle. Moreover, Boyce has withdrawn significant sums from his 401(k) to purchase consumer goods, but claimed he could not afford to pay his student loans and kept them in deferment for several years prior to filing. In a Chapter 13, Boyce could replenish his 401k to the detriment of the unsecured creditors. These considerations also demonstrate the appropriateness of dismissal for bad faith. *See In Re Hageney,* 422 B.R. at 262 ("purchase of ... unnecessary luxury item merely worsened the debtors' insolvency and occurred at the expense of the debtors' unsecured creditors. Such a purchase must result in a determination of bad faith under § 707(b)(3)(A)").

## B. Totality of the Circumstances Of Debtor's Financial Condition

The bankruptcy court alternatively dismissed the Chapter 7 finding Boyce is capable of making some payment to his creditors and that thus, under a totality of the circumstances, it would be an abuse to allow the case to go forward.

Boyce contends that the court erred because the court must have inappropriately found that he misstated his income. However, as noted above, the bankruptcy court did appropriately find that Boyce misstated his income.

■ In addition, the ability to repay standing alone justifies dismissal. *See In re Stubblefield,* 430 B.R. 639, 645 (Bankr. D.Or.2010) (ability to pay debts will, stand-

ing alone, justify a section 707(b) dismissal) (citing *In Re Price*, 353 F.3d at 1140).[2]

 As noted above, the totality of the circumstances regarding Boyce's financial condition is not limited to Boyce's circumstances at the time of filing. While ability to pay is paramount, courts may also consider whether a debtor can reduce excessive expenses, whether a debtor is eligible for relief under another chapter, and the future's effect on a debtor's actual income. *Id.* at 645–46. As noted above, the bankruptcy court appropriately found that Boyce would continue to receive profit sharing providing an ability to have, on average, $778 per month to repay creditors.[3] In addition, debtor could eliminate unnecessary expenses such as a second car.[4] Accordingly, the bankruptcy court did not err in finding that the totality of the circumstances also justified dismissal of the case.

## CONCLUSION

For the reasons stated above, the bankruptcy court's decision is affirmed.

---

**2.** *But See, In re Cribbs*, 387 B.R. 324, 334 (Bankr.S.D.Ga.2008) (applying requirement in that court's circuit that disposable income is a primary factor but, standing alone, is insufficient to warrant dismissal for abuse).

**3.** This is true even if Boyce continues to repay his 401(k) loan. Moreover, it would not be inappropriate to refuse to consider the expense of the 401(k) loans under the totality of the circumstances because there would be no recourse for failure to repay such a loan. Boyce used his 401(k) to finance unnecessary

vehicles and therefore repayment at the expense of unsecured creditors can be considered abusive. *See, e.g., In re Hilmes*, 438 B.R. 897, 905 (N.D.Tex.2010).

**4.** To the extent Boyce argues that the means test used for calculating current monthly income should have been used to assess the totality of the circumstances, such a test is separately considered under section 707(b)(2) not under the totality of the circumstances.