**In re Scott Spencer STRICKLAND and Aisha Minerva Strickland, Debtors.**

**No. 13–42820–MER.**

United States Bankruptcy Court,
D. Minnesota.

Jan. 13, 2014.

Craig W. Andresen, Craig W. Andresen Law Office, Bloomington, MN, for Debtors.

Colin Kreuziger, U.S. Trustee Office, Minneapolis, MN, for U.S. Trustee.

John R. Stoebner, Lapp, Libra, Thomson, Stoebner & Pusch, Minneapolis, MN, Trustee.

## MEMORANDUM DECISION

MICHAEL E. RIDGWAY, Bankruptcy Judge.

This chapter 7 case came before the Court on November 14, 2013, on the verified motion of the United States Trustee ("UST") to dismiss the case under 11 U.S.C. § 707(b)(1), based on the presumption of abuse under 11 U.S.C. § 707(b)(2).[1] Colin Kreuziger appeared on behalf of the UST; Craig W. Andresen appeared for the Debtors. This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. The Court makes this memorandum decision based on all the files, records and proceedings herein, and pursuant to Fed. R. Bankr.P. 7052, made applicable to this contested matter by Fed. R. Bankr.P. 9014(c). For the reasons set forth below, the UST's motion will be granted.

## BACKGROUND

In this case, the Debtors, Scott Spencer Strickland and Aisha Minerva Strickland,

---

1. The motion also sought dismissal under 11 U.S.C. § 707(b)(3) based on the totality of circumstances. The Court, however, is of the opinion that the matter may be resolved on the basis of 11 U.S.C. § 707(b)(2).

filed a joint, voluntary chapter 7 petition on May 31, 2013; supporting schedules were filed on June 13, 2013. In their voluntary chapter 7 petition, the Debtors indicated that their debts were primarily consumer debts as defined by 11 U.S.C. § 101(8).[2] On Line 12 of the Debtors' initial Official Form B22A ("Form B22A"), the Debtors listed their total current monthly income as $7,391.79. On Line 28 of Form B22A, the Debtors listed $496.66 as an expense under "Other Necessary Expenses: court-ordered payments"; the Debtors' responsive pleadings identified the expense as the garnishment of Mrs. Strickland's wages commenced by Wells Fargo.[3] On Line 47 of Form B22A, the Debtors listed their total deductions as $7,386.95. The Debtors listed their total monthly disposable income as $4.84 on Line 50 of Form B22A.[4] The Debtors also listed a monthly student loan payment in the amount of $193.82 as an additional expense claim on Line 56 of Form B22A.

The UST timely filed a statement of presumed abuse under § 704(b)(1); his motion to dismiss was also timely filed. In it, he disagreed with the Debtors' calculations. The UST argued that the Debtors understated their current monthly income and overstated their expenses. On his version of the Debtors' Form B22A, the UST adjusted the Debtors' current monthly income and expenses and argued that the resulting monthly disposable income created a presumption of abuse under § 707(b)(2).[5] In response to the UST's motion, the Debtors attached income and expense revisions and argued that the revisions showed that their case did not constitute an abuse. The Debtors also filed a "last minute" amended Form B22A and listed $7,104.57 on Line 12 as total current monthly income; $496.66 on Line 28 as a court-ordered payment expense for a wage garnishment; $6,941.21 on Line 47 for their total deductions; $163.36 on Line 50 as total monthly disposable income; and $193.82 on Line 56 as an additional expense claim for monthly student loan payments.

At the hearing on the motion to dismiss, the Court heard argument on the three remaining issues concerning the proper calculation of current monthly income and expenses:[6] (1) whether the current monthly income included income that was earned during the statutory six-month period, but that was not received until after it; (2) whether the Debtors properly deducted pre-petition wage garnishments; and (3) whether student loan payments constituted a "special circumstance" sufficient to rebut the presumption of abuse.

---

2. All statutory references herein are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101–1532, unless otherwise indicated.

3. See paragraph 11 of the Debtor's response (Doc. No. 22) filed on September 27, 2013. In addition, question 4(b) of the Debtors' statement of financial affairs (Doc. No. 8) listed a seizure of $748.00 for the benefit of Wells Fargo Card Services.

4. Because the Debtors' monthly disposable income was less than $124.58, the presumption of abuse did not arise. See 11 U.S.C. § 707(b)(2)(A)(i)(I). ($7,475 divided by 60 equals $124.58. The Debtors' figure of $4.84 is less than $124.58).

5. Any amount of monthly disposable income over $207.92 is sufficient to trigger the presumption of abuse. The threshold for the presumption of abuse is $12,475 divided by 60, which equals approximately $207.92.

6. The parties settled their dispute regarding the Debtors' tax liability before the hearing. In their response, the Debtors conceded that the UST's calculation of federal and state income tax liability was "substantially correct." Therefore, the UST's approximation of the Debtors' tax rate as 20.35% will be used to determine the Debtors' tax liability.

## DISCUSSION

Under § 707(b)(1), the court may dismiss a chapter 7 case of an individual debtor whose debts are primarily consumer debts after finding that the grant of relief to the debtor would constitute an abuse of the provisions of chapter 7. Under § 707(b)(2)(A)(i), the court must presume that abuse exists, "if the debtor's current monthly income, reduced by the amounts determined under § 707(b)(2)(A)(ii), (iii), and (iv), and multiplied by 60, is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or (II) $12,475." 11 U.S.C. § 707(b)(2)(A)(i). This statutory calculation is known as the "means test." *See Ransom v. FIA Card Servs., N.A.,* — U.S. ——, 131 S.Ct. 716, 721, 178 L.Ed.2d 603 (2011). The term "current monthly income" ("CMI"), as used in the means test, is defined at § 101(10A), which provides in pertinent part:

The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii);

. . . .

*Id.* For purposes of calculating a debtor's monthly expenses under the means test, a debtor's monthly expenses specified as "Other Necessary Expenses" shall be a debtor's actual monthly expenses in effect on the date of the order for relief. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I); *see also In re Washburn,* 579 F.3d 934, 936 (8th Cir. 2009) ("It is undisputed that the separate term, 'actual monthly expenses,' refers to expenses that the debtor in fact incurs."). Further, "the monthly expenses of the debtor shall not include any payments for debts." § 707(b)(2)(A)(ii)(I).

The debtor may rebut the presumption of abuse only by demonstrating "special circumstances" that justify additional expenses or adjustments of CMI for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(i). Examples of special circumstances include "a serious medical condition or a call or order to active duty in the Armed Forces." *Id.* In addition, the debtor may rebut the presumption of abuse only if the additional expenses or adjustments to income, which result from special circumstances, cause the product of the debtor's CMI to be less than the threshold amount for presumed abuse. 11 U.S.C. § 707(b)(2)(B)(iv).

### A. Current Monthly Income Calculation

■ The first issue is whether the Debtors' CMI includes their pay earned during the statutory six-month period but received outside of the same period. As the case was commenced on May 31, 2013, the applicable CMI period is November 1, 2012 through April 30, 2013. The Debtors argue that pay received after April 30, 2013 should not be included within CMI because the pay was not received by the Debtors during the statutory six-month period. The UST argues that pay received after April 30, 2013 should be included within CMI because the pay was derived during the statutory six-month period. April 26, 2013 was the last day in the pay period for Mr. Strickland's May 3, 2013 pay advice;[7] April 30, 2013 was the

---

**7.** This fact was asserted by the UST and not disputed by the Debtors. See footnote 1 in

last day in the pay period for a certain pay advice of Mrs. Strickland.[8]

In *In re Robrock*, 430 B.R. 197, 204 (Bankr.D.Minn.2010), Judge Kishel determined that the term "current monthly income" under § 101(10A) means "the amount of income 'derived' during the six months ... regardless of the date of receipt. The statutory concept is logically understood as 'income that resulted from employment during the relevant six-month period.'" *Id.* (quoting *In re Bernard*, 397 B.R. 605, 607 (Bankr.D.Mass.2008)). The Debtors argue that income must be received by the Debtors during the statutory six-month period in order to be included within CMI.[9] Applying Judge Kishel's analysis in the *Robrock* case to this one, the Court disagrees with the Debtors' contention. 430 B.R. at 204. The Court concludes that pay derived during the statutory six-month period is properly included as CMI even though that pay was received outside of the statutory six-month period. Therefore, Mr. Strickland's May 3, 2013 pay advice, as well as Mrs. Strickland's pay advice for the pay period ending on April 30, 2013, should both be counted as CMI because those pay advices were "derived" during the statutory six-month period.

### B. Deducting Pre-petition Wage Garnishments as an Expense for Court–Ordered Payments

█ The Debtors argue that they may properly deduct garnishments as an expense for court-ordered payments. The UST disagrees.

The Code provides that monthly expenses listed as "Other Necessary Expenses" must be a debtor's actual monthly expenses in effect on the date of the order for relief. *See* § 707(b)(2)(A)(ii)(I). The Code then expressly requires that "the monthly expenses of the debtor shall not include any payments for debts." *Id.* On Line 28 of Form B22A, the Debtors listed $496.66 as an expense under "Other Necessary Expenses: court-ordered payments"; the Debtors' responsive pleadings identified the expense as pre-petition wage garnishments.[10] Under the Code, these expenses must be actual monthly expenses in effect on the date of the order for relief. *See* § 707(b)(2)(A)(ii)(I). By virtue of the automatic stay of § 362, on the day of the Debtors' bankruptcy filing, the pre-petition wage garnishment ceased to be in effect as an actual monthly expense. 11 U.S.C. § 362. Additionally, the Debtors have not shown that their pre-petition wage garnishment will continue to be in effect as of the date of the order for relief.

Other courts have explored the issue of whether a debtor may deduct garnishments as an expense for purposes of determining the debtor's monthly disposable income. In the context of a chapter 13 case, the court in *In re Cleaver*, 426 B.R. 390, 395 (Bankr.D.N.M.2010), construed § 707(b)(2)(A)(ii)(I) to determine whether a debtor may deduct garnishments as an expense when calculating the debtor's monthly disposable income. The court reasoned that the debtors' garnishments were not properly deductible as an ex-

the UST's October 1, 2013 reply (Doc. No. 23) to the Debtors' response.

**8.** This fact was asserted by the UST and not disputed by the Debtors. See footnote 2 in the UST's October 1, 2013 reply (Doc. No. 23) to the Debtors' response.

**9.** See paragraph 2 of the Debtors' reply (Doc. No. 25) filed on October 19, 2013. The Debtors cite *In re Katz*, 451 B.R. 512, 516 (Bankr. C.D.Cal.2011) for this proposition.

**10.** See paragraph 11 of the Debtors' response (Doc. No. 22) filed on September 27, 2013.

pense for court-ordered payments because the garnishments were an unsecured, pre-petition debt that would be discharged at case completion and discontinued after the bankruptcy filing. *Id.* Similarly, in *In re Law,* 2008 WL 1867971, at \*13 (Bankr. D.Kan. Apr. 24, 2008), the court construed § 707(b)(2)(A)(ii)(I) to find that an IRS wage levy was not deductible as an expense for court-ordered payments because a "wage levy is not a court-ordered payment." As noted by that court, even if such levy was considered a court-ordered payment, the debtor still may not properly deduct it as an expense because a court-ordered payment deduction "was meant to apply [only] to those court ordered payments that will be an ongoing obligation." *Id.* at \*13 n. 70. The Debtors argue that *Law* and *Cleaver* are inapposite here because they are chapter 13 cases addressing how much a debtor could pay towards funding a chapter 13 plan.[11] The Debtors also argue that *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), renders *Law* and *Cleaver* moot; they claim that Form B22C is no longer determinative of projected disposable monthly income.[12] *Lanning,* a chapter 13 case, held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." 130 S.Ct. at 2478. The Debtors' reliance on *Lanning* is misplaced because *Lanning's* holding does not render moot the points of law from *Law* and *Cleaver* that are applicable to this matter. First, *Lanning* did not specifically address whether pre-petition garnishments were an expense for court-ordered payments. Second, actual monthly expenses were not at issue in *Lanning* as they are in this case. Instead, *Lanning* addressed issues regarding whether a bankruptcy court may account for known or virtually certain changes in a debtor's income. *See* 130 S.Ct. at 2478. Accordingly, the Court concludes that the Debtors may not deduct the $496.66 in garnishments as an expense for court-ordered payments.[13]

## C. Figures Applicable to the Debtors' Means Test Calculation

Based on the above findings, and applying the relevant figures into the Debtors' means test calculation, the Court presumes the Debtors' case to be an abuse of the chapter 7 provisions. For purposes of Line 12 of B22A, and after combining Mr. Strickland's CMI of $5,055.20 and Mrs. Strickland's CMI of $2,646.66, the Court determines that the Debtors have a total CMI of $7,701.86. Next, after taking into account the Debtors' tax rate of 20.35%, the Court determines that the Debtors' total tax liability, for purposes of Line 25,

---

**11.** See paragraph 11 of the Debtors' reply (Doc. No. 25) filed on October 19, 2013.

**12.** See paragraph 11 of the Debtors' reply (Doc. No. 25) filed on October 19, 2013.

**13.** Even though *Cleaver,* and *Law,* were chapter 13 cases that construed § 707(b)(2)(A)(ii)(I), the reasoning of those respective courts applies with equal force in a chapter 7 case because § 1325 incorporates § 707. *See* § 1325(b)(3) (explaining that, to calculate "disposable income" under § 1325(b)(2), "[a]mounts reasonably necessary to be expended under paragraph (2) ... *shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)*.") (emphasis added); *see also Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 2475, 177 L.Ed.2d 23 (2010) ("We decline to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio,* the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes.").

is $1,567.33. Because of the Court's determination that wage garnishments are not deductible as a court-ordered expense, the Court finds that Line 28 should be zero, rather than the Debtors' figure of $496.66. Applying the figures used by the Debtors' on their amended Form B22A for the remaining expense deductions, the Court determines that the Debtors' expenses for purposes of Line 33 total $3,492.57. Next, Line 41 is $788.82 (the same figures the Debtors use). Then, after subtracting Line 33 and Lines 42 through 44 from the Debtors' CMI, Line 45a is $79.50.[14] Debt payment deductions for purposes of Line 46 total $2,364.21. The Debtors' allowable expense deductions (from the total of Lines 33, 41, and 46) equal $6,645.60 (Line 47). After subtracting the total deductions figure from the Debtors' CMI figure, the Court determines that $1,056.26 is the Debtors' total monthly disposable income (Line 50). This figure multiplied by 60 equals $63,375.60, which is above the threshold amount of $12,475.00. Accordingly, the Court concludes that the presumption of abuse arises in this case.

### D. "Special Circumstances"—Student Loan Payments

 Lastly, the Debtors argue that their monthly student loan payments in the amount of $193.82 constitute "special circumstances" sufficient to rebut the presumption of abuse. The Court need not address the merits of this issue because, based on the above calculations, even if the payments for the student loans qualified as a special circumstance so as to be included as a deduction for means test purposes, the amount included as a deduction is still not enough to overcome the presumption of abuse.[15]

Accordingly, for the reasons articulated in this memorandum decision,

**IT IS HEREBY ORDERED THAT:**

1. The motion of the UST is granted and the Debtors' objections are overruled.

2. The Debtors shall have fourteen (14) days from the date of this Order to convert their case to one under chapter 13 or the case will be dismissed without further notice and hearing.

---

**14.**
$3,492.57 + $788.82 + $2,284.71 = $6,566.10. CMI of $7,701.86 minus $6,566.10 = $1,135.76, which is multiplied by .07 (7% is the chapter 13 administrative expense multiplier for the District of Minnesota), for a product of $79.50.

**15.** The Debtors' monthly disposable income totals $1,056.26, and $1,056.26 minus $193.82 equals $862.44. That figure is greater than $207.92, and the presumption of abuse is still triggered. Stated another way, $862.44 multiplied by 60 totals $51,746.40, which exceeds the abuse threshold figure of $12,475.00. Even if the Debtors' calculation of CMI is used, disallowance of the wage garnishments still results in the presumption of abuse being triggered, and not being rebutted: $7,104.57 minus $6,566.10 equals $538.47, multiplied by .07 equals $37.69. Total deductions amount to $6,603.79; when this amount and the student loan payment of $193.82 are subtracted from $7,104.57, there is still $306.96 of monthly disposable income.