In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 25-2878 & 25-2879

IN RE: STEPHEN FALKNER and AHMED ALAYAH,

*Debtors-Appellees*,

APPEALS OF: CITY OF CHICAGO.

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division-BK.
Nos. 25-09387 & 25-09060 — **Donald R. Cassling**, *Bankruptcy Judge.*

_____

ARGUED MAY 18, 2026 — DECIDED JUNE 10, 2026

_____

Before SCUDDER, KIRSCH, and TAIBLESON, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Ahmed Alayah and Stephen Falkner filed for Chapter 13 bankruptcy. Their repayment plans promised to pay their attorneys' fees before paying debts owed to nonpriority unsecured creditors. One nonpriority unsecured creditor, the City of Chicago, objected to the plans. It contended that paying the attorneys first violated 11 U.S.C. § 1325(b)(1)(B), which allows a court to confirm an objected-to plan when it "provides that all of the debtor's projected disposable income … will be applied to make payments to unsecured creditors under the plan." The bankruptcy court

overruled the City's objections and confirmed the plans. We affirm.

**I**

**A**

Alayah filed a Chapter 13 bankruptcy petition in June 2025. A few months later, in September 2025, he filed his final amended debt repayment plan. His plan proposed using his net monthly income over the course of three years to pay secured creditors for two car loans, various priority creditors for certain debts, the bankruptcy trustee's fee, and his bankruptcy attorneys' fees. His plan specified that the remaining $800 of net income would go to nonpriority unsecured creditors like the City of Chicago on a pro rata basis. Alayah lives in Illinois and earns a below-median income. He owes the City $12,511.66.

Falkner similarly filed a Chapter 13 bankruptcy petition in June 2025 and his final amended debt repayment plan in September 2025. His plan proposed using his net monthly income over the course of three years to pay a secured creditor for a car loan, the bankruptcy trustee's fee, and his bankruptcy attorneys' fees. His plan clarified that he would have no net income left to pay nonpriority unsecured creditors like the City of Chicago. Falkner, too, lives in Illinois and earns a below-median income. He owes the City $7,766.10.

**B**

The City objected to the confirmation of Alayah's and Falkner's plans. It took issue with the fact that the plans allocated funds to pay attorneys' fees during the three-year commitment period. Chicago contended that this violated 11 U.S.C. § 1325(b)(1)(B), which allows a bankruptcy court to

confirm a plan following an objection by an unsecured creditor if "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period … will be applied to make payments to unsecured creditors under the plan." The City insisted that bankruptcy attorneys are not unsecured creditors, so they cannot receive any projected disposable income. Alternatively, the City contended that even if bankruptcy attorneys are unsecured creditors, Alayah's and Falkner's attorneys were out of luck because they never filed any proof of claim.

The bankruptcy court confirmed Alayah's and Falkner's plans, overruling Chicago's objections. It adopted its reasoning from prior cases resolving the same issue. See Order, *In re Gordon*, No. 24-bk-18109 (Bankr. N.D. Ill. Apr. 25, 2025), Dkt. 30; Order, *In re White*, No. 24-bk-18215 (Bankr. N.D. Ill. Apr. 25, 2025), Dkt. 34. In those cases, the bankruptcy court determined that the debtors' attorneys were unsecured creditors who could share in projected disposable income without violating § 1325(b)(1)(B). It also concluded that they did not need to file a proof of claim to receive payment.

The City of Chicago now appeals.

## II

### A

"Chapter 13 of the Bankruptcy Code provides bankruptcy protection to 'individual[s] with regular income' whose debts fall within statutory limits." *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (quoting 11 U.S.C. §§ 101(30), 109(e)). "Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, Chapter 13 debtors are permitted to keep their property, but they must agree to a

court-approved plan under which they pay creditors out of their future income." *Id.* (cleaned up). "A bankruptcy trustee oversees the filing and execution of a Chapter 13 debtor's plan." *Id.*

Chapter 13 classifies three types of claims that a debtor might owe to a creditor. See W. Homer Drake, Jr., Paul W. Bonapfel & Adam Goodman, *Chapter 13 Practice & Procedure* § 3.2 (2d ed. 2025). Generally, a creditor has a secured claim when it has a lien on the debtor's property "that the creditor can enforce to subject the encumbered property to payment of the debt." *Id.* (citing 11 U.S.C. § 506(a)). A creditor has a priority claim when it is listed in § 507(a). See *id.* And a creditor has a nonpriority unsecured claim if it is "not secured by a nonavoidable lien and is not a priority claim." *Id.*

A bankruptcy court "shall confirm" a Chapter 13 repayment plan if it meets certain statutory conditions. 11 U.S.C. § 1325(a). Among other requirements, the plan must comply with the provisions of Chapter 13, it must come after specific fees have "been paid," and it must have been "proposed in good faith." *Id.* § 1325(a)(1)–(3).

But additional rules apply when "an unsecured creditor or the bankruptcy trustee objects to confirmation." *Hamilton*, 560 U.S. at 508. When that happens, "the court may not approve the plan" unless it pays the objecting unsecured creditor in full, 11 U.S.C. § 1325(b)(1)(A), or "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period … will be applied to make payments to unsecured creditors under the plan," *id.* § 1325(b)(1)(B).

The "applicable commitment period" depends on the debtor's income level. For debtors who make at least the median income for their state, the commitment period is five years. See *id.* § 1325(b)(4)(A). For debtors with below-median incomes, the commitment period is three years. See *id.* Nonetheless, "if the plan provides for payment in full of all allowed unsecured claims over a shorter period," the commitment period "may be less than 3 or 5 years." *Id.* § 1325(b)(4)(B).

The Bankruptcy Code does not define the term "projected disposable income." *Hamilton*, 560 U.S. at 509. But Congress did define "disposable income" as the "'current monthly income received by the debtor' less 'amounts reasonably necessary to be expended' for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures." *Id.* (quoting 11 U.S.C. § 1325(b)(2)(A)(i)–(ii)). "Current monthly income" generally refers to the average of "the debtor's monthly income during … the six full months preceding the filing of the bankruptcy petition." *Id.* (citing 11 U.S.C. § 101(10A)(A)(i)). And the phrase "amounts reasonably necessary to be expended" once again depends on the debtor's income level. "For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for 'maintenance or support,' but for a debtor with income that exceeds the state median, only certain specified expenses are included." *Id.* (citing 11 U.S.C. §§ 1325(b)(2)(A)(i), (b)(3)(A), 707(b)(2)).

B

The City contends that following an objection, Chapter 13 plans may not allocate funds to pay for attorneys' fees during a commitment period. It points to § 1325(b)(1)(B), which prohibits a court from confirming a plan that does not pay an

objecting unsecured creditor's claim in full unless "the plan
provides that all of the debtor's projected disposable income
to be received in the applicable commitment period … will be
applied to make payments to unsecured creditors under the
plan." The City insists that Chapter 13 counsel are not unse-
cured creditors, so they cannot receive any of the debtor's pro-
jected disposable income without violating § 1325(b)(1)(B).

But we cannot read § 1325(b)(1)(B) in isolation. The Bank-
ruptcy Code as a whole makes clear that Chapter 13 plans
may provide payments for attorneys' fees during a commit-
ment period. Indeed, it requires plans to do just that. Section
1322(a)(2) provides that a plan "shall provide for the full pay-
ment … of all claims entitled to priority under section 507,"
including attorneys' fees, see 11 U.S.C. §§ 507(a)(2), 503(b)(2),
330(a)(4)(B). And, for its part, § 1326(b)(1) clarifies when that
payment must occur. It mandates that priority claims, includ-
ing attorneys' fees, see *id.* §§ 507(a)(2), 503(b)(2), 330(a)(4)(B),
"shall be paid" "[b]efore or at the time of each payment to
creditors under the plan," *id.* § 1326(b)(1). As a result, Chapter
13 plans must provide for the payment of attorneys' fees be-
fore or at the same time as any payments to nonpriority unse-
cured creditors during the commitment period. Cf. 8 *Collier on
Bankruptcy* ¶ 1325.11(4)(c)(i) (16th ed. 2026) ("[I]nterpreting
section 1325(b) to preclude payment of administrative ex-
penses would place it in direct conflict with section
1326(b)….").

Some additional statutory background helps explain our
reasoning. Congress added the current language of
§ 1325(b)(1)(B) in the Bankruptcy Abuse Prevention and Con-
sumer Protection Act of 2005. See Pub. L. No. 109-8,
§ 102(h)(1), 119 Stat. 23, 33. The bankruptcy community refers

to the amendment by the shorthand "BAPCPA." The prior version of § 1325(b)(1)(B) allowed a court to approve a Chapter 13 plan following an objection from an unsecured creditor if "all of the debtor's projected disposable income to be received" in a given period of time was going to be "applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (2000 ed.). But today "all of the debtor's projected disposable income" must be "applied to make payments to *unsecured creditors* under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

The City contends that the 2005 amendment marked a sea change for Chapter 13 attorneys' fees. Before the amendment, "Chapter 13 plans routinely paid the debtor's net income figure first toward priority claims in the order set forth in § 507—which included both prepetition claims … and postpetition or administrative expenses (such as attorney's fees and trustee's compensation)—and then applied the balance to the nonpriority unsecured creditor class." *In re Williams*, 394 B.R. 550, 563 (Bankr. D. Colo. 2008). But after the amendment, Chicago tells us, plans may no longer pay attorneys' fees before paying nonpriority unsecured creditors during the commitment period.

We view Congress's 2005 amendment as more limited. The Supreme Court has instructed us not to "read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton*, 560 U.S. at 517 (cleaned up). And nothing in the amendment suggests Congress meant to displace the decades-old practice of Chapter 13 plans providing for payment of attorneys' fees prior to nonpriority unsecured claims. Section 1325(b)(1) on its own says nothing about when debtors should

pay their attorneys. And BAPCPA left untouched the Code sections requiring debtors to pay attorneys' fees before or at the same time as nonpriority unsecured claims. See 11 U.S.C. §§ 1322(a)(2), 1326(b)(1); see also *id.* § 330(a)(4)(B).

As we see it, Congress seems to have amended § 1325(b)(1)(B) to account for BAPCPA's changes to Chapter 13 for above-median debtors. BAPCPA subjected above-median debtors to a "means test," *In re Ross-Tousey*, 549 F.3d 1148, 1151 (7th Cir. 2008), *abrogated on other grounds by Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 68 & n.4, in which Congress prescribed what counts as a reasonably necessary expense, see 11 U.S.C. § 707(b)(2)(A)(ii)–(iv). The means test appears to allow above-median debtors to deduct secured claims and priority claims, including administrative expenses like attorneys' fees, as reasonably necessary expenses when calculating their projected disposable income. See 11 U.S.C. §§ 1325(b)(3), 707(b)(2)(A)(iv), 707(b)(2)(A)(iii), 507(a)(2), 503(b)(2), 330(a)(4)(B); see also 8 *Collier on Bankruptcy* ¶ 1325.11(4)(c)(i) (confirming this understanding). Congress therefore may have modified § 1325(b)(1)(B) to clarify that above-median debtors only needed to use their projected disposable income to make "payments to unsecured creditors." 11 U.S.C. § 1325(b)(1)(B). To be sure, Congress could have been clearer about the amendment's implications for below-median debtors. But we ultimately see no statutory indication that it aimed to use this accounting change to delay or otherwise change the timing of payments to below-median debtors' attorneys.

The City's reading falls short even if we focus on § 1325(b)(1)(B) in isolation. As an initial matter, we see no reason why attorneys' fees could not count as a reasonably

necessary expense for below-median debtors. After all, the Code authorizes "reasonable" compensation to attorneys for bankruptcy work in part because of the "necessity of such services to the debtor." *Id.* § 330(a)(4)(B). Treating these fees as a reasonably necessary expense would mean that the money would not come from a debtor's projected disposable income, resolving any tension with § 1325(b)(1)(B). See Drake, Bonapfel, Goodman, *Chapter 13 Practice & Procedure* § 8.29 ("[T]he definition of expenditures for the maintenance and support of a debtor and her dependents under Code § 1325(b)(2)(A) must of necessity be expanded to include deductions for payment of secured and priority claims under the plan.").

Regardless, even if that impression is mistaken and the fees are not a reasonably necessary expense, bankruptcy attorneys will often count as unsecured creditors who can receive projected disposable income under the terms of § 1325(b)(1)(B). The Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The phrase "order for relief" refers to the filing of a Chapter 13 bankruptcy petition. *Id.* § 301. And a "claim" is a "right to payment," even if it is "contingent" or "unmatured." *Id.* § 101(5)(A).

Given the Code's statutory definitions, it stands to reason that any lawyer who accrues an unsecured right to payment before the debtor files a Chapter 13 bankruptcy petition would qualify as an unsecured creditor who would then be able to receive projected disposable income. See *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("Congress intended by this language to adopt the broadest available definition of 'claim.'"); 8 *Collier on Bankruptcy* ¶ 1325.11(4)(c)(i) ("[C]ourts

will hopefully recognize that an administrative expense is an unsecured claim and … section 1325(b) requires funds … to be paid to 'unsecured creditors' generally, not just nonpriority creditors."); see also *In re Dumas*, 608 B.R. 902, 909 (Bankr. N.D. Ga. 2019) (collecting cases treating attorneys as unsecured creditors).

Further, bankruptcy attorneys may receive payments as unsecured creditors without filing a proof of claim. It is true that the Rules of Bankruptcy Procedure provide that generally "every creditor must file a proof of claim … for the claim … to be allowed." Fed. R. Bankr. P. 3002(a); see also *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015) ("A creditor must file a proof of claim in order to participate in Chapter 13 plan distributions."). But the Bankruptcy Code specifically contemplates a separate procedure for administrative expenses, stating that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). That procedure applies here.

In short, we see no hard-and-fast rule requiring attorneys to file a proof of claim to receive payment. Cf. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (applying the general/specific canon to the Bankruptcy Code in part because "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions" (cleaned up)). Creditors may (and perhaps should) file a request for payment instead of a proof of claim when seeking administrative expenses. See 4 *Collier on Bankruptcy* ¶ 503.02(1) ("If a creditor is clearly seeking an administrative expense, the request for payment of an

administrative expense should not be labeled as a 'proof of claim,' because it is not properly asserted in a proof of claim.").

One final observation warrants emphasis. A Chapter 13 plan must account for attorneys' fees only once. If it deducts them as a reasonably necessary expense, it should not then allocate projected disposable income to pay for them as well. See 8 *Collier on Bankruptcy* ¶ 1325.11(4)(c)(i) (counseling against double-counting); see also *In re Echeman*, 378 B.R. 177, 182 n.7 (Bankr. S.D. Ohio 2007) ("In essence, the effective result is the same for all debtors—priority unsecured claims can be counted once, no more, no less, in determining which funds are left for nonpriority unsecured creditors."); *Dumas*, 608 B.R. at 921–22 (similar). But regardless of labels, one thing is clear: Congress in 2005 did not upset decades of past practice or erase the Code's express command that debtors must pay bankruptcy attorneys' fees "[b]efore or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b)(1).

For these reasons, we AFFIRM.